ROSENFIELD DRY GOODS COMPANY, LTD., Petitioner, *v.* COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket No. 10248. Decided July 26, 1926.

Amount spent for improvements and repair of leased premises in accordance with provisions of lease, *held* to constitute a capital expenditure, the cost of which should be depreciated over the life of the lease.

*I. H. Rubenstein* for the petitioner.
*Henry Ravenel, Esq.,* for the respondent.

Before Smith, Littleton, and Trussell.

This proceeding is for the redetermination of a deficiency in income and profits taxes for the year 1920, in an amount less than $10,000.

FINDINGS OF FACT.

The taxpayer is a Louisiana corporation with its place of business at Baton Rouge. Effective October 1, 1919, the taxpayer leased for a period of five years, for the conduct of its business, a building at the corner of Main and Third Streets, in the City of Baton Rouge, which building was then occupied by the taxpayer. The lease provided in part:

This lease is made and accepted for and in consideration of a monthly rental of FOUR HUNDRED DOLLARS, ($400.00), per month, payable as follows: The sum of Three Hundred Dollars in cash, and one Hundred Dollars in a credit on the amount to be expended by the lessee in making repairs and alterations to said leased premises, as hereinafter specified.

The said lessee hereby obligates itself to make the following repairs and alterations to the said leased premises, to-wit: The front of said store building on Main Street shall be so changed as to make the show windows on Main Street correspond with the show windows on Third Street; remove the brick pillars on Main Street and put in iron columns; lower the shed on Third and Main Streets; put in new flooring on entire ground floor, and re-paint the inside of the building. All said work to be done in a first class workmanlike manner by J. D. Brown, contractor and builder, and to the satisfaction of W. B. Burke.

It being understood and agreed that the said lessee shall expend in making the said repairs not less than Six Thousand Dollars, which amount shall be reimbursed without interest, as hereinabove provided, by monthly reduction of One Hundred Dollars on the rent herein stipulated.

It is agreed between the parties hereto that the existing lease between the said lessors and lessee shall be terminated and annulled from and after the first day of October next, when this lease shall go into effect and remain in full force for five years thereafter.

At the time of commencing the improvements, an account styled "Improvement Account" was opened on the taxpayer's books and

the amounts expended charged to that account. The contractor was not able to obtain delivery on certain iron gratings and windows as soon as he had expected. Inasmuch as the holiday season was coming on, the taxpayer was under the necessity of purchasing lumber and other materials in order to utilize the space which was to be improved. This temporary work was done by others than the contractor. When the wrought iron work, windows and certain columns required for the improvements were received, the temporary improvements were pulled out and then it was discovered that two of the columns were not in accordance with the specifications and the temporary structure was replaced by another temporary structure until finally the improvements were completed. All vouchers for materials for the work and all amounts paid for labor, totaling $7,155.20, were charged to the "Improvement Account." When the president of the taxpayer company learned at the close of the year that the total amount had been charged to the "Improvement Account," he informed the bookkeeper that certain amounts had been erroneously charged to that account and that they should have been charged to expense. He then went over the vouchers and determined that certain of the vouchers which he had ordered to be charged to the "Improvement Account" should have been charged to expense. The total amount of these vouchers was $2,535.11. He determined that the amount properly chargeable to improvements was $4,620.09. At the close of the year 1920 the $2,535.11 in question was transferred out of the "Improvement Account" to expense. This amount, claimed as a deduction from gross income in the tax return for 1920, was disallowed as a deduction by the Commissioner.

### OPINION.

SMITH: In its petition the taxpayer alleges that of the $7,155.20 charged to the "Improvement Account" prior to December 31, 1920, $2,535.11 constituted an expense and as such was deductible from gross income in the income-tax return of the taxpayer. The taxpayer alleges that the improvements agreed upon in the contract of lease were far from being completed at December 31, 1920, and were not continued for the reason that it was foreseen that the improvements originally contemplated would be inadequate to care for the increasing business; that the management of the corporation felt that it would be best to try to cancel the lease and to secure a lease for a flat monthly rental; that the lease was finally canceled and a new one made, effective July 1, 1923, for a period of 75 months.

The taxpayer has offered no evidence to the effect that the improvements contemplated by the lease effective October 1, 1919, were not completed as originally contemplated. The lease provided for im-

provements to cost $6,000. More than that amount was charged to the "Improvement Account." We think that the action of the Commissioner in holding that the entire amount charged to the "Improvement Account" was a capital item and that depreciation upon the same should be taken over the life of the lease was correct. *Appeal of National City Bank of Seattle*, 1 B. T. A. 139.

The taxpayer also alleged error on the part of the Commissioner in computing the invested capital for the year 1920 in accordance with the provisions of article 845 of Regulations 45 and not in accordance with the rule laid down in *Appeal of Guarantee Construction Co.*, 2 B. T. A. 1145. The effect of this decision has, however, been nullified by section 1207 of the Revenue Act of 1926. *Appeal of Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*

STERNHAGEN concurs in the result only.